Mark Fox on behalf of Melange Computer Services. Two basic issues as the court knows. One is the cost issue, the prevailing party aspect of it, and then the fees issue. The prevailing party issue, as this court knows, is in OVO, so there's no deference given to the district court. If you look at the pleadings here, and the test of course is... Why was the district court wrong? As to Planet Bingo, they had a claim for infringement of the 1289 patent. They lost on that. With respect to your client, you essentially lost with respect to the first version of your device, and prevailed with respect to the second version. So why under those circumstances could the district court not find that neither side was a prevailing party? That's the question. Judge, we didn't lose with respect to either version 1 or 2. Version 2 we won on summary judgment. Version 1 they voluntarily dismissed. Yeah, but after the judge made a decision that because you've destroyed the computer code, there would be an adverse inference against you. Right, and as they say in their brief, with that rebuttable presumption of infringement, they were, quote, within inches of winning. Winning what? $250? It doesn't make any difference what the amount of money is, does it? I mean, if they won on part, and you won on part, the judge could find that neither side was a prevailing party. Why couldn't he find that? Let me answer it real directly. The issue is who prevailed on the significant goal. Their goal was, as they say in their brief, on page 38, 39, and 40 of their brief, they say that they achieved the significant goal, and I'll quote them, of having, quote, because Melange stopped using version 1 of the MaxPak system on which Fortunate filed its infringement claim, close quote. My client stopped using that version three months before they served the lawsuit. I don't know what they achieved. They just continued for three years pursuing version 2, and then they lost on summary judgment. So I think it's hard for them to say, the fact is what they did is if they won, they won before they served us. So why did we spend, rhetorically speaking, three years arguing about version 1? That's their contention. It's in their brief, and that's their position. They say that's why they're the prevailing party, because they forced us to stop using version 1. They forced us to stop using it three months before they served. They prevailed on a significant issue in litigation. You've got a presumption of infringement against you as a result of destroying the source code. Now, there may not be a lot of money involved in it, but I'm not sure that that has anything to do with whether the district court could properly find that each side prevailed on some issues. Well, Your Honor, if you're within inches, as they say, to quote them, of winning a case, it seems odd to me that that's when you give up. You usually give up when you're losing. In their brief, they say they're within inches of winning. There was a stipulation of dismissal, right? So what did they gain? They gained nothing. They sued, as they say, to stop version 1. That was being redundant. That was stopped before the lawsuit was at issue. They lost on version 2, which really was the only version. Version 1 only existed for a matter of a few days. Even if you're right and your client is a prevailing party, the district court judge could have so found and then not awarded any cost, right? It's not mandatory. The district court has discretion. Right. It's de novo on the prevailing party. It's an abuse of discretion. That's what we've held. The law is very, very clear. The district court could say, I'm sorry, we're not going to give you any cost, right? It's an abuse of discretion standard on that. Right. It's got to go back to the district court. District courts sort of signal that they don't think any costs are to be awarded here. What are we talking about just for use of judicial reason? How much cost are you talking about? A little under $10,000 for cost for my client. I don't remember. Less than it costs to bring the appeal. Well, I don't think we brought the appeal page just on the cost. Well, I know you've got an argument you want on the fees, but assuming that you had no grounds on that, then we'd send this case back so the district court judge could say, well, fine, the federal circuit says that you're a prevailing party, no cost. Game's over. Right. What's difficult about this case, and Judge Poe is it, In the real game here for the other fees? Sure. Shouldn't you be talking about that? Yes, but the connection Is somebody going to talk about that? I'm going to talk about it right now. How much is going to be used over $10,000? I'm almost gone on my five, so I'm going to be quick. If we lose on the prevailing party issue, then I've got a problem on 285. And this court has just recently said, June 18th of this year, an innovation case, that it's not going to comb the record for 285 issues, that the province is really the district court. The problem with this case is, unfortunately, Judge Poe didn't give really any explanation for what he did on anything here. He really didn't. Does he have to? Oh, yeah. According to this court, he does. Yes, Your Honor. I mean, we said it in our brief, and then this court just a couple of months ago, you know, a case, innovation versus splash. Under Ninth Circuit law, a district court judge is supposed to state the reason for denial of cause. Right. I think that's correct. Right, but to reach that, it's still de novo as to the prevailing party. He didn't get there. You've got to get there first. Right. I'm about to do what Judge Razor warned me of. I'm about to cut into... On the legal fees issue? His decision on the attorney's fees doesn't mention the prevailing party question. It just says denied, right? Denied. Denied. Now, in Rule 11, let me just say this quickly. I think this court can decide on Rule 11 based on the record. It's undisputed. You know, they didn't even try to look at the game for 18 months until after the lawsuit was filed. There's no dispute about that. They compared a piece of literature to the claim, not the device. That's one thing. As to 285, I concede, although the brief doesn't really say it as strongly as it should, except in the footnote, I think it's a remand issue. Otherwise, this court's going to have to comb through the entire record to decide. And I say to Jerome Case, which says you're not going to do that. So I'm going to take Judge Razor's admonition to not... Thank you, Mr. Falk. Mr. Weiss? May it please the Court, let me get right to the prevailing party issue, which is a predicate issue under Section 285 with respect to fees, and that's what we're focused on today. Basically, the Brooks Furniture case makes very clear that we look to the overall objective. Did a party achieve its overall objective in litigation? Here, we were sued on two patents. The overall objective was to obtain royalties on virtually all of our sales, and in addition to obtain a permanent injunction with respect to our main product, and that was based on a patent, the 784 patent that does not expire until 2005. But you sued on the 1289 patent, right? And you gave up on that. I apologize, Your Honor. We sued on the 289 patent, but that claim was immediately stayed. There was never anything done with respect to that patent in this case, and that patent was invalidated in another proceeding. So that had nothing to do with this case. Tell me, these always arise in a much larger context, and a part of the larger context here is that the judge finds resistance to his discovery orders, and that resistance then leads to a finding that certain things were destroyed, and there's a lot of other context here. How much do you think we can consider that? Well, Your Honor, I think, in part, we're restricted by what the judge said, which was, of course, that- He didn't say anything very much. He said there's no prevailing party, but we do have this record that shows there's probably a lot there that the judge is concerned about, and he's reflecting in his decision. How much of that do you think we can consider? Well, I think very little. With respect to Panabingo, there was no discovery motion practice. There was no finding of any spoliation or anything of that sort. If we're doing de novo review, we're supposed to kind of put ourselves in his place and redo the decision, right? So why can't we take all those things into consideration and maybe see ourselves as a little perturbed with both parties and leaving it at that? I think to do that, you don't need to do very much. In other words, basically, the opposition to the fees motion is about five pages long. It's in the appendix, I think more or less in its entirety. The entire argument with respect to this concept of overall objectives and significant value is on page 6048 of the appendix. And in it, all that Fortunet does is to list by name the counterclaims that were brought by Panabingo and to say, well, those were also dismissed as part of the resolution of the case. Therefore, there's no prevailing party. But maybe the district judge just denied the fees here because he didn't think that they'd done anything terribly. He obviously didn't think that their suit was frivolous, even though they lost a significant part. And so he says, you know, I'm not sure this is not a fee situation. This is not an extraordinary case, not an exceptional case. You know, isn't that pretty clear that that's what he did? I think that's an inference that can be drawn. I think, though, that the judge is obligated in the Section 285 when there's been a motion made for fees to actually perform the analysis so that we can, as litigants, consider the judge's reasoning and decision and so that this court, as an appellate court, can then review that. I don't think that it's appropriate for the judge just to say that my gut reaction is no and for this court then to be bound by that and to just indulge the assumption that, well, he must have known what he was doing. What is it that they did was so terrible here that it should lead to an award of fees? Basically, never looked at the product. I thought there was an affidavit that they looked at the advertising. Why did they have to look at the product? I think under Juden and under the other cases, you have to look at it if you can, and they could. We said it would cost less than $10. You get sanctioned if you rely on the advertising instead of the product. They watched the game being played. They looked at the advertising, but you're complaining they didn't play the game themselves. So they get sanctioned for that? I believe, yes. I believe under Juden you've got to do that. I think if they played it, they would have seen that their theories made no sense at all. I think also here, very unusually, you've got two conflicting infringement claims. On one patent, you're saying your game is one game. On a second patent, they're saying your game is actually two games. We also have a situation where their plaintiff, their president, is a patent infringement expert. He knew very well that you've got to actually check the product if you want to make an infringement assertion. I think with respect to the 784 patent, which is what we focused on specifically, there's this extraordinary combination of terms in the claim, separate and discrete. We have two elements that have to be both separate and discrete. And they were alleging from the beginning that these two elements in our game were associated, they were combined. And so that's exceptional, that's extraordinary, and that should be punished in our view. Thank you, Mr. Weiss. Mr. Rounds? Good morning. I'm Michael Rounds, and I represent the FLEs. With respect to the prevailing party issue, there doesn't have to be one. And that's exactly what Judge Pro found. He correctly held that this was a mixed bag case, which exactly it was. Now, it moots the issue of costs, and it moots the issue of attorney's fees under 285 in this case. Shouldn't you just have played the game? Isn't that a pretty minimal requirement? No, it's not, actually, Your Honor. And I think the critical point here is what difference would it have made? None in either case. Particularly with Melange, where the court found you had to have the source code to determine whether there was concurrent execution. Viewing the game would have made no difference whatsoever. And Melange has not articulated any. The pre-filing investigation in this case was very substantial. The advertising materials were seen at the trade show. They were gathered. The product was demonstrated, and it was watched. The patent in suit, the 787, had been litigated previously by this lawyer and interpreted by the same judge. And a claim chart was created and sent to Melange in the first letter. Very substantial due diligence in this case. And clearly it meets the standards set forth at Neneman and Q Pharma by any stretch of imagination. Because in those cases, for example, in Q Pharma, it was admitted that they could have done a chemical test, and that would have made a difference, and they didn't do it. That's not what we have here. There's nothing we could have done to determine concurrent execution. In fact, Judge Pro found that it was the best evidence of infringement, and that it was destroyed by Melange. Now, just to pick up on a comment that Mr. Fox had made just briefly, they did not stop using version 1 before the lawsuit. That statement is absolutely inaccurate. In fact, the record was undisputed that after they got the complaint and the letter, that's when they made the changes to the source code. They never preserved that evidence, and that's why there was a presumption of infringement entered by the district court judge. Now, I think you have to look at the prevailing party in the context of the case as a whole with respect to each party. And I think it's important in particular with Melange that there was the court making this fine and concerning presumption of infringement, and they're stopping version 1, which is why the lawsuit was brought in the first place. But I think more importantly, you also have to look at what else was in this case. There were permissive counterclaims brought by Melange related to alleged defamatory statements made by Fortunet concerning the illegality of their device. And they saw damage as an injunction. Those claims were dismissed. So again, this is a mixed bag. Let's take a look at Planabingo. They sued for intentional interference with contract. That was completely unrelated to the case that we brought. They sued under the 289 patent. They sued for trade libel concerning illegality. All of these claims were unrelated to the claims that were brought by Fortunet. They sought damages. They sought injunctive relief. And ultimately, those claims were dismissed. What we really have before us here, though, is just the prevailing party determination. And on that, we have a sentence. Is that enough for us to really review? Is there some requirement that we be given some indication of the judge's findings and conclusions? Well, I think you have to look at it with respect to the standard that this court has on appeal. With respect to the prevailing party, you look at it de novo. So the court looks at the same record the judge called it. How do we decide? Because the law doesn't require that you have to prevail on every issue in order to be a prevailing party. So prevailing on a little bit or a whole lot? How are we supposed to decide if it's really de novo where these two litigants fit on a balanced scale? Or to be sure, each of them obtained a little bit? Now, the question is, do you think more or do they think more? How do you de novo? You're sitting up here instead of down there. How are you going to do it? Well, I think you do what Judge Pro did. And that is, he entered a lot of orders in this case. We don't know what Judge Rader, the presiding judge, has suggested that what Judge Pro said was and that sort of thing. I've had enough of you. Go away. And that's one way to read this. But how are we? Are we supposed to de novo a review of that's what we think he did? No, I think when you look at the record de novo, just like you would on a Markman order, you take a look at the record and you make a determination as a matter of law whether it was appropriate. And I think that's what you do here. I think you look at all of the factors that I just mentioned and you make a determination as to whether there was a prevailing party. Well, what's it take? Is it a numeric thing, 51 against 49 percent? Because you've got on two sides of the scale, each side of the litigation, walked away with something. Well, then you can't have two prevailing parties because you're talking about, I mean, it would be kind of unusual if the judge said both of you are prevailing parties. And since you're both prevailing parties, I don't think I should award costs against anybody? Well, the Brooks Court counsels against doing the cards, as you well know, and accounting. However, certainly in the Ruiz case that we've cited at the court, they looked at the record as a whole and just determined whether any party prevailed. And in that case, they found that no party had prevailed. And in that case, there was competing claims going back and forth, and the court found there was no prevailing party. And I think that's the same thing we do here. You have to look at the cases as a whole, look at the claims they brought, look at the claims that we brought, see what we achieved and see what they achieved. And on the whole, you have a mixed bag. And there's no prevailing party and it's a matter of law. That's our position. But without being able to offer us any precedent of this court that would support such a ruling? Well, I think the Ruiz case is good authority for that. I mean, I think in Ruiz the court found that no party had prevailed and they looked at the competing claims of both parties in the case as a whole and made the finding that they did. And the Brooks case just stands for the relation of the litigation result to the overall objective of the litigation. And I think that there's competing arguments on both sides with respect to that. And again, you end up in the same place. I think we brief that to the court while in our briefs. Do you relish the opportunity to go in front of Judge Pearl again? Not at all, Your Honor. I don't think any of the lawyers here are anxious to go back down and relitigate this case. The good judge does have discretion if he says, well, those fellows up in Washington said I made a mistake and there was one prevailing party here. If we were to say that, then it has to go back for the judge to decide whether he wants to give cause. And you would say we would save that by saying, as a matter of law, wherever the evidence is in equipoise as to who won or whenever, it's, well, what, 40-60? If it got down to be 80-20, you would say, as a matter of law, the guy that won 80 percent is not a prevailing party? Is that where your rationale takes me? Aren't you in a zone somewhere around 60-40? Well, certainly the cases aren't helping me there. But I think ultimately 80-20, if I were to answer that specifically, I would say 80-20 would probably be a case where there would be a prevailing party. But, again, I think that you just have to look at the case as a whole. And here there was competing claims on both sides, requests for damages. And without using a scorecard, I think you just end up that both parties, in fact all three parties, did not prevail in this case. I'm not sure that prevailing parties necessarily are the no-vote question. I mean, Ruiz didn't seem to treat it that way. Ruiz seemed to say that, to some extent, it was discretionary for the district court to determine. Yeah, and I agree with that. I think the Brooks case raised, for the first time, and at least the other cases that we've looked at that we've cited to the court, that it is a de novo review, but actually the factual finding would seem to be under an abuse of discretion. So there does seem to be some tension between those issues and the cases. What do you mean, the fact findings, as to whether or not somebody did prevail on this much or that much? That's right. That's real hard to review. You're making it sound like an obvious determination. Now, a bunch of facts, you roll them up at the end on a legal conclusion? That would suggest, wouldn't it, that you need to have your district court judge write you a nice opinion laying out all these facts as to whether somebody was or was not a prevailing party? You know, and I don't agree with that for the following reason, Your Honor. In the consolidated case that we cited at the court, if the factual findings are unnecessary in light of the record and there's a clear way to affirm, which I think there is here, then there's no need for remand. And all the opinions from this court indicate that this court is loathe to remand because it just means more work if the case can be decided by this court. And ultimately, I think this is a case where the record is extremely well-developed. The court can look at the orders that was issued by the court. It can look at the pleadings. All of the record is well-developed in this case in order for the court to make a decision on prevailing party. So I don't think this is a circumstance where it needs to go back down. That logic holds true, I think, as well with respect to the exceptional case and Rule 11 assertions that are being made in this case. In our view, the record was extremely well-developed on these issues. There was orders issued by the district court, many of them, that relate to these issues. And we just think that this is a case where the court can make the decision itself. You are basically arguing with respect to the diligence issue that diligence depends on the facts of a particular case and that a per se ruling that you're not diligent unless you play the game, so to speak, would be wrong. That's absolutely right. Well, your adversary is looking for a bright line here. Yeah, I don't think there's any support for that in the case law whatsoever. And if you look at the Q Pharma case as well as the Intiman case that was decided in 2007. Well, you would caution us against having a special rule for Rule 11, if you will, for a patent case, saying that you must actually play the game or inspect the product. That's right. And I think if you look at the logic of Q Pharma, Intiman, even Juden, the issue is what would this additional investigation show? And in Q Pharma and Intiman, the court found there was more that could be done in terms of the pre-filing investigation and still found no Rule 11. In this case, there was no more to do on the issue of concurrent execution as it relates to Melange. As a matter of law, the software had to be available in order to make that determination. And Melange destroyed it. Now, if you take a look at Planet Bingo, there's really no significant difference. You've still got to have a basis for bringing the suit. I take it your basis for bringing the suit is the advertising said you could play both games. Absolutely. It could not have been more clear. You can't just bring suit and say, well, maybe the software, if we get it, will show something. You've got to have a basis. Of course that's true. And in this case, there was a substantial basis for infringement. Melange admitted that there was concurrent play of a poker game and a session bingo game in their advertising. It was bold. You could play the extra games during a session bingo game. It could not have been more clear. With respect to Planet Bingo, the court can just look at our summary judgment motion. All of the evidence that was relied upon was the advertising that was gathered at the trade show. There is nothing more that would have been gleaned from the play of the game. So in either circumstance, there was a substantial pre-filing investigation. This wasn't sloppy work. This patent had been litigated, the 787 patent previously. There was claim constructions on it. This lawyer knew a lot about the patent. He knew a lot about this industry. And so did his client. This is just not the type of case at all where there was an insubstantial pre-filing investigation. In fact, the record is the exact opposite. Thank you very much. Thank you, Mr. Rounds. Now, Mr. Fox, you and Weiss are going to split your rebuttal time as well. That's correct, your Honor. Okay, well, I'll try to hold you to your time. All right. You have a couple of questions. I never said that it was three months. I said served. I didn't say sued. And I know you have an audio tape. They filed the complaint on May 3rd. They didn't serve us for three months. That's what I said. So I think Mr. Rounds just misheard me. The source code issues a red herring. Here's why. First of all, they didn't ask for the source code for a year until after the case was at issue. If the source code were so important, one would think you would ask for it a little sooner than a year. Second, when they asked for it, they asked for the wrong thing. They asked for the source code for the player unit, and then they realized that didn't work. In terms of Mr. Rounds saying that they couldn't tell anything by playing it, well, first of all, how do you know until you try? They watched people play it, right? That's all the affidavit says. They saw a demo from a distance. Their own expert, when they finally got around to hiring an expert, Mr. Gafford, and it's in the record, and I've got the sites, the pinpoint sites, said you can't play two games. This is version two. Can't play two games at once. I tried with Mr. Rounds' associate. We went and tried to play the game. The question that occurs to me is if playing the game is irrelevant and superfluous, why did Mr. Rounds come to my office? Is the advertising false? It could be read that way. Yes, Your Honor. A marketing person wrote that. The record established that. It was a marketing person who wrote that. It didn't do what the ad said, but you can't compare an ad. Well, you might have a claim for misrep. Let's put it in another setting. Yes, Your Honor. Let's put it in a setting of a pharmaceutical or something like that, and somebody publishes an advertisement all over the place and says, you know, our product contains X, X, and X, and X, and the pharmaceutical patentee looks at his patent and says, oh, my God, that's every single ingredient in our claim one, and it's in the same order, same amount. Right. And then if you take the deposition of the person, the person says, that's all wrong, that ad is wrong, which is what happened in this case. They quickly took the deposition. So let's assume that in order for you to reverse engineer this pharmaceutical case I'm talking about, it costs a lot of money, right? And so somebody says, well, their advertisement, they confess that they're infringing. Why can't I bring a lawsuit? Am I going to run into a Rule 11 problem if I don't spend the net worth of my little company to prove that their advertisement is false? Absolutely, because you have a continuing obligation under Rule 11. It's not, as you know, Your Honor, just when you file it, you have a continuing obligation. If you persist with litigation once you know you have no basis, it is frivolous at that point. Maybe the advertising is enough to get you to the jury, actually. If you have an admission from the other side that their product is constructed this way, you might be enough to get to the jury, much less to satisfy Rule 11. Except for two indisputable facts. One is within days of them saying, we think you infringe, the software was changed. That's one. Second, they deposed the programmers who said, that ad is wrong. We have nothing to do with that. That's wrong. They knew. They lose on Markman. This was three years pursuing a version. Thank you, Mr. Fox. Thank you. Mr. Weiss. Thank you, Your Honor. I believe Mr. Rounds made a very critical concession. And that is that this concept of prevailing party is not an all or nothing thing. I think he conceded that if you had an 80-20 situation, I guess, which means that if I won 80% and I lost 20%, I'm still a prevailing party. I think the only way that you can ever make that kind of an assessment is if you undertake a reasoned analysis of each side's performance in the case. That didn't occur here. And that was not even presented to the district judges. How do you know it didn't occur here? Because if we look at the opposition to the fees motion, the entirety of that presentation is on page 6048 of the appendix. How do you know the district court didn't make a reasoned analysis? That's fair. He was not invited to make that in the opposition to the fees motion. It's possible that he did it, but we can't know that. And since it wasn't in the opposition to the fees motion, it seems to me the more reasonable inference is that he did not do that and simply engaged in the claim campaign. Why didn't he, of all people, make the most reasoned analysis? He sat through the entire proceeding and knows everything that happened from beginning to end. We're the ones that are guessing here. Isn't he the one that deserves kind of our respect for having a far greater appreciation of all the factors? I think he's the person best positioned to perform that analysis. In our view, he clearly didn't do that here. It's certainly not reflected in his written work product, which is all we have to know. Does he have to write it down? I believe that he does, Your Honor. I believe that he does for purposes of allowing us to decide whether we're going to accept it or seek review of it and for purposes of permitting this court to understand what he did and to determine whether he proceeded appropriately. These are significant issues. I think they do have to be written down. This is Rule 54. If you look at the opinions of our court, we frequently, in a situation where the appellant prevails entirely, that's an affirmance, we say no costs. That's correct, Your Honor. We're making a terrible mistake because we're not writing down our rationale and reasoning. I believe costs on appeal, it's a different standard than 285. I'm not talking about 285. I'm talking now about 54, just regular old costs that go to the prevailing party, right? Correct, Your Honor. All right, so what I'm getting at is you've just said to Judge Brader you believe it's reversible error for the district court not to have written down, jot and tittle, all the reasons why he said there was no prevailing party, right? I think the innovation technologies case decided on June 16th more or less stands for that proposition. In other words, that was the reverse situation. There the court said we're going to give you fees but essentially just parroted the statute. And here the court did the reverse. It said we're not going to give them to you and just essentially parroted the papers that were before him. And I think under 285 that's not sufficient just to basically say take my word for it. I've been here all along and I know what I'm doing. I think we need more than that. Thank you, Mr. Weiss. Thank you, Your Honor.